UWALTER J. ROTHSCHILD, Judge.
Lawrence E. Chehardy, in his capacity as Assessor of the Parish of Jefferson, appeals from a judgment of the trial court declaring that the property of Metairie Country Club (MCC) is exempt from ad valorem taxation. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On December 28, 2000, Metairie Country Club (MCC) filed the instant petition for recovery of taxes paid under protest, naming as defendants the Louisiana Tax *167 Commission, Lawrence J. Chehardy in his capacity as assessor, and Harry Lee in his capacity as ex-officio tax collector for Jefferson Parish and as the party to whom the taxes in this matter were paid under protest. In this petition, MCC contended that the ad valorem property taxes assessed for the year 2000 were in violation of the laws and constitution of the State of Louisiana, and the MCC sought recovery of the payment of taxes.
l4In response to this petition, defendant Chehardy brought exceptions of vagueness and failure to state a cause of action on the basis that a refund of taxes could only be obtained from defendant Harry Lee, the party to whom the taxes were paid. The trial court granted in part defendant’s exceptions, ordered plaintiff to amend the petition and dismissed plaintiffs claims against Lawrence Chehardy for repayment of taxes. Plaintiff subsequently amended the original petition seeking a declaratory judgment that the ad valorem tax assessed against it by the assessor was in violation of the laws and constitution of the state of Louisiana.
Thereafter, both Metairie Country Club and Lawrence Chehardy filed opposing motions for summary judgment in this matter with supporting evidence and affidavits. By judgment rendered May 15, 2002, the trial court denied both of the motions and the matter proceeded to a bench trial on September 4, 2002.
At trial, the parties did not introduce additional evidence, but stipulated to the evidence previously submitted at the motions for summary judgment, including reports and depositions of witnesses and the articles of incorporation and by-laws of Metairie Country Club. The trial court further heard oral arguments from counsel for both parties and took the matter under advisement. By judgment rendered on September 18, 2002, the trial court declared that the property owned by Metair-ie Country Club was exempt from ad valo-rem taxation. The court further ordered that Harry Lee, as sheriff and ex-officio tax collector for Jefferson Parish, refund to Metairie Country Club the property taxes collected for the years 2000 and 2001.
Lawrence Chehardy now appeals from this judgment of the trial court on the basis that MCC failed to satisfy the constitutional requirements of an exemption to ad valorem tax assessment. Specifically, the assessor argues |Rthat the trial court erred in failing to find that the net earnings of the Club inure to the benefit of its shareholders/members, thereby precluding the tax exemption according to state law.
LAW AND DISCUSSION
Metairie Country Club claims exemption of its facilities from ad valorem taxation under the 1974 Louisiana Constitution, Art. VII, Section 21(B)(1)(a), which provides in pertinent part as follows:
Section 21. In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
[[Image here]]
(B)(1)(a) Property owned by a nonprofit corporation or association organized and operated exclusively for religious, dedicated places of burial, charitable, health, welfare, fraternal, or educational purposes, no part of the net earnings of which inure to the benefit of any private shareholder or member thereof and which is declared to be exempt from federal or state income tax;
The jurisprudence of this state has consistently held that constitutional and statutory grants of exemption from *168 taxation must be strictly construed in favor of the taxing body and against the taxpayer desiring the exemption. Any possible doubt is fatal to the exemption. Thus, an exemption, being an exceptional privilege, must be clearly, unequivocally and affirmatively established. Zapata Haynie Corp. v. Larpenter, 583 So.2d 867 (La.App. 1st Cir.1991), writ denied, 589 So.2d 1071 (La.1991).
Our resolution of this matter hinges on the interpretation of a constitutional provision, and is therefore a question of law. Constitutional provisions are to be construed and interpreted by the same rules as are other laws. When a constitutional provision is plain and unambiguous, its language must be given effect. Aguillard v. Treen, 440 So.2d 704, 707 (La.1983). The standard of review |fion a question of law is to determine whether the lower court’s decision is legally correct or incorrect. Huddleston v. Farmers-Merchants Bank & Trust Co., 00-640 (La.App. 3 Cir. 11/2/00), 772 So.2d 356, 358.
At the trial of this matter, the parties stipulated to the evidence which was presented at the motion for summary judgment hearing in this matter. Evidence in the record consists of the corporate charter of MCC, its articles of incorporation and by-laws, corporate tax returns for the year 1999, and depositions of the president of MCC and its financial auditor.
In support of them position that the country club is exempt from ad valorem taxation, Metairie Country Club presented the deposition testimony and affidavit of Eric F. Fullmer, a certified public accountant who supervises the annual financial audit of the organization. Mr. Fullmer stated in his affidavit that MCC is a nonprofit organization that is exempt from income tax under the U.S. Internal Revenue Code, and that no part of the net earnings of the club inure to the benefit of any member thereof.
In support of its position that the exemption is not applicable to this organization, the assessor relies on the affidavit and report of John Marcus, a certified public accountant who was engaged by the assessor to review documentation to determine MCC’s tax exempt status. In his report issued in April of 2002, Mr. Marcus stated that he reviewed the corporate tax returns, the annual reports the deposition testimony and various letters to MCC membership which discuss the need for dues increases.
In the opinion of Mr. Marcus, the net earnings of Metairie Country Club inure to the benefit of the shareholders and members of the club. Mr. Marcus specifically noted that the costs of membership in the club in the form of dues and assessments are related to the operating results of the club and the net earnings (positive or negative). Mr. Marcus also noted that special assessments or dues 17increases are necessary when there is a deficit, but unnecessary when the results of operations generate positive net earnings. The report concluded that because the membership is required to contribute extra money to make up any deficiencies resulting from the club’s operations, a benefit is received by those members when the net earnings of the club do not require funding of a deficit.
In its reasons for judgment, the trial court stated as follows:
Defendants argue that if Metairie Country Club has net earnings, those earnings inure to the members’ benefit by relieving them or lessening a dues obligation or the payment of an assessment to acquire improvements to the club. Basically, the argument is that if a member has less of a detriment, i.e., *169 has to pay less or no dues, fees or assessments, then that is a benefit.
This argument fails when contrasted with the undisputed facts of the operation of Metairie Country Club as a fraternal non-profit organization. The record amply confirms that no member or shareholder receives a monetary benefit should Metairie Country Club realize a net income in any year. It is undisputed that the value of the stock does not increase while it is held by any member. There are no dividends paid, nor is interest accrued on the value of the stock, no matter the value of the assets of the club or net income realized. It is also undisputed that, notwithstanding the assumed existence of net earnings, each member of the club must still pay dues on a monthly basis, pay charges for services provided by the Club, and pay all assessments, whether special or not, in order to retain the membership.
Based on the evidence submitted, this Court concludes that Metairie Country Club is entitled to be declared exempt from ad valorem taxes in accordance with the 1974 Constitution of the State of Louisiana.
On appeal, Assessor Chehardy concedes that MCC satisfies all of the constitutional requirements for an ad valorem tax exemption, except one: the net earnings of the club inure to the benefit of its shareholders/members. Moreover, the assessor contends that although the trial court correctly held that MCC had no profit or positive net earnings, the trial court manifestly erred in failing to consider that MCC’s negative net earnings inure to the members’ benefit, and thus the requirements of the tax exemption are not satisfied. Assessor Chehardy contends |sthat there is a direct relationship between net earnings and dues and assessments paid by members in that by not taking money away from the members by dues or assessments, the members receive a benefit. Finally, the assessor contends that the club’s articles of incorporation provide that, upon dissolution of the organization, the club’s assets may be distributed to its members. Assessor Chehardy argues that this provision further supports the claim that net earnings of the club inure to the benefit of its members, i.e., the assets of the club may be distributed to the members upon dissolution.
Thus, the primary issue presented by this appeal is whether the trial court erred in interpreting the constitutional provision in light of the facts of the present case to conclude that no net earnings (either positive or negative) of the MCC inure to the benefit of any of its members. We have carefully reviewed the entire record in this matter, as well as the applicable law and jurisprudence, and we find the record supports the trial court’s finding that no net earnings of the MCC inure to the benefit of its members.
The MCC produced competent evidence that its financial statements are audited on an annual basis by an independent certified public accountant, Eric Fullmer. Mr. Fullmer unequivocally stated that the organization posted a deficit in the years 2000 and 2001 due in part to the assessment of property taxes and that special assessments were imposed on the members to cover the deficit. In his affidavit contained in the record, Mr. Fullmer stated that MCC is a non-profit organization, that the value of the stock in the corporation does not increase over time, and that no part of the net earnings of MCC inure to the benefit of any member of the club. In his deposition, Mr. Fullmer explained the term “net earnings” as the excess or deficit of revenues over expenses shown on the annual financial statements.
*170 [ aAlthough the assessor presented the report of another CPA, John Marcus, who opined that a benefit is received by the club members when the net earnings of the club do not require the funding of a deficit, the trial court chose to accept the opinion of Mr. Fullmer over that of Mr. Marcus. In choosing to accept the testimony of one expert over that of another, the trial court did not misinterpret the clear terms of the constitutional provisions. The provision of the constitution specifically provides that in order for the exemption to apply, no net earnings shall inure to the benefit of a private shareholder or member. At the trial of this matter, there was conflicting testimony as to whether this was the case.
Although there is no dispute in this case as to the definition of “net earnings,” there is no controlling jurisprudence in this state as to what constitutes a benefit to shareholders from net earnings. Absent such a rule of law, the trial court was required to make a factual finding as to whether the provisions of the constitutional exemption apply in this case.
A trial court evaluates expert testimony using the same principles that apply to other witnesses and has great discretion to accept or reject expert or lay opinions. Orea v. Scallan, 32,622 (La.App.2d Cir.1/26/00), 750 So.2d 483. Where experts differ in their testimony, it is the trial court’s responsibility to decide which is most credible. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305; Young v. Turnipseed, 33,602 (La.App.2d Cir.6/21/00), 764 So.2d 1172.
Obviously, the trial court carefully considered all of the evidence and found Mr. Fullmer’s statement to be financially sound and more persuasive than the opinion advanced by the expert retained by the assessor. Further, although the assessor argues that the net earnings of the club will inure to the MCC members on dissolution, the articles of incorporation actually provide that the assets will be distributed by appointed Commissioners. There is no provision that the members Imwill necessarily benefit upon dissolution, and nothing will preclude taxation of the members at that point should the assets be distributed as suggested by the assessor.
After a careful review of the record, we find that the trial court’s determination is supported by the record and is legally correct, and it will not be disturbed. We agree with the determination of the trial court that Metairie Country Club met its burden of proving its entitlement to a tax exemption pursuant to the provisions of La. Const. Art. VII, Section 21(B)(1)(a).
Accordingly, for the reasons assigned herein, the judgment of the trial court declaring that the Metairie Country Club is exempt from ad valorem property taxation and ordering a refund of the taxes paid under protest is affirmed. Appellant shall bear all costs of this appeal.

AFFIRMED.