JjLOLLEY, J.
Charles R. Jones appeals the judgment of the Civil District Court for the Parish of Orleans, State of Louisiana granting the motion for partial summary judgment in favor of Erroll G. Williams, Assessor for the Third Municipal District, City of New Orleans (the “Assessor”).
Facts
As stated, this lawsuit was originally filed by Jones in the Civil District Court for the Parish of Orleans, State of Louisiana. It is being considered by this court instead of the Fourth Circuit Court of Appeal, because Jones is a judge for that circuit and all of the other Fourth Circuit judges recused themselves from the matter. Defendants to Jones’ lawsuit were the Assessor and the City of New Orleans, Bureau of the Treasury (the “City”).
At issue in this case is the homestead exemption on property owned by Jones at 2522-24 O’Reilly Street in New Orleans, Louisiana (the “O’Reilly Street house”). Jones purchased the property in 1979 as sole owner and remains sole owner through the present. Upon purchasing the O’Reilly Street house, he applied for and received a homestead exemption on the property. In 1991, Jones married Charlee R. Jones. The couple entered into a prenuptial agreement prior to their marriage wherein they adopted a separate property regime. That agreement provided, in pertinent part:
I.
The said Intended Husband and Intended Wife shall be and remain separate in property. Accordingly, they do hereby formally renounce those provisions of the Louisiana Revised Civil |2Code which establishes a community of acquets and gains between intended husbands and intended wives, as those provisions are now written or may be hereafter amended.
II.
The said Intended Husband and Intended Wife declare and agree that any and all property and effects of the said intended Husband and intended Wife, whether owned by him or her at the time of the celebration of said intended marriage, or acquired during said mar *1156 riage, are hereby declared to be separate property and they and each of them do hereby expressly reserve, to themselves individually the entire and complete administration of their respective particular movable and immovable property, and the respective-free enjoyment •of revenues of their separate estates.
After 1991 when he married Charlee, Jones continued to apply for and receive a homestead exemption on the O’Reilly Street house. Charlee also applied for and received a homestead exemption on her house, located at 4519 Bancroft Drive in New Orleans (the “Bancroft Drive house”). In November, 2002, the Assessor notified Jones that the homestead' exemption on the O’Reilly Street house was being revoked retroactive to 2001, due to the Assessor’s belief that Jones lived at the Bancroft Drive house. Jones replied to the Assessor expressing his disagreement to the revocation; however, the revocation was made nonetheless. The taxes on the property were paid under protest, and Jones filed this lawsuit in the trial court.
Both Jones and the Assessor filed motions for partial summary judgment on the issue of Jones’ entitlement to a homestead exemption on the O’Reilly Street house.[1] The trial court granted the Assessor’s motion and denied Jones’. The trial court certified the judgment as a final judgment under La. C.C.P. art. 1915, and this appeal ensued.[2]
^Discussion
On appeal, Jones raises only one issue— that being, whether La. Const, art. VII § 20(A) allows each spouse in a marriage that is subject to a separate regime to claim a homestead exemption on separate property owned by that spouse, if both spouses satisfy all other requirements for obtaining a homestead exemption.

Summary Judgment

When considering a disposition on summary judgment, appellate courts review such de novo, i.e., under the same criteria that governed the district court’s consideration of whether summary judgment was appropriate. Costello v. Hardy, 2003-1146 (La.01/21/04), 864 So.2d 129. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). A court must grant a motion for summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). Summary judgment procedure is now favored under our law. La. C.C.P. art. 966(A)(2).

The Homestead Exemption

In a close tie with L.S.U. football, the homestead exemption has long-been the sacred cow of Louisiana. In 1934, during the throes of the Great Depression and in the midst of the Huey P. Long era, state ■leaders expanded the homestead exemption to protect families from municipal taxing authorities.[3] Louisiana was one of *1157 fourteen states to offer a homestead exemption as relief to citizens reeling from the effects of the depression. As explained by former Louisiana State University Law School Professor Charles A. Rey-nard, originally, the essential purpose of the plan was to Loffer the small farmer and home owner relief in tax delinquency proceedings. See Charles A. Reynard, Louisiana Homestead Tax Exemption—An Unlitigated Constitutional Provision, 10 La. Law Rev. 405 (1950). This original plan slowly evolved in Louisiana’s statutory scheme, finally being “set in stone” in the 1974 Constitution and becoming the constitutionally protected homestead exemption Louisiana home-owners benefit from today.[4]
Here, Jones argues that the Louisiana Constitution does not prohibit him from taking a homestead exemption on his separately owned O’Reilly Street house, while his wife takes a homestead exemption for her separately owned house. Jones maintains that following his marriage to Charlee and up to the present, he has resided “at times” at the Bancroft Drive house and “at other times” at the O’Reilly Street house. Jones also argues that he “regularly occupies” the O’Reilly Street house on a daily basis, and he “receives and returns telephone calls there, eats there, and attends to other personal matters” at that house. Moreover, Jones claims that his mother and two of his siblings live in the house rent-free, with Jones paying the utilities.
However, the record also shows that on various legal documents, Jones is shown as residing at the Bancroft Drive house. There is also reference in the record that his driver’s license lists the Bancroft Drive house as his residence. Finally, whereas the prenuptial agreement referred to a matrimonial home, neither house was designated as such therein.
At the time the Assessor revoked Jones’ homestead exemption, La. Const. Art. VII, § 20(A), stated in pertinent part:
(1) The bona fide homestead, consisting of a tract of land or two or more tracts of land with a residence on one tract and a field, pasture, or garden on the other tract or tracts, not exceeding one hundred sixty acres, buildings and appurtenances, whether rural or urban, owned and occupied by any person, shall be exempt from state, parish, and special ad valorem taxes to the extent of seven thousand five hundred | ¡¡dollars of the assessed valuation. The same homestead exemption shall also fully apply to the primary residence, including a mobile home, which serves as a bona fide home and which is owned and occupied by any person, regardless of whether the homeowner owns the land upon which the home or mobile home is sited; however, this homestead exemption shall not apply to the land upon which such primary residence is sited if the homeowner does not own the land.
(2) The homestead exemption shall extend to the surviving spouse or minor children of a deceased owner and shall apply when the homestead is occupied as such and title to it is in either husband or wife but not to more than one homestead owned by the husband or wife.[5]
*1158 * * ⅜
Initially, we note that the jurisprudence of this state has consistently held that constitutional and statutory grants of exemption from taxation must be strictly construed in favor of the taxing body and against the taxpayer desiring the exemption. Metairie Country Club v. Louisiana Tax Com’n., 03-538 (La.App. 5th Cir.10/28/03), 860 So.2d 165, writ denied, 2003-3209 (La.02/06/04), 865 So.2d 728. Any possible doubt is fatal to the exemption. Id. Thus, an exemption, being an exceptional privilege, must be clearly, unequivocally and affirmatively established. Id., citing Zapata Haynie Corp. v. Larpenter, 583 So.2d 867 (La.App. 1st Cir.1991), writ denied, 589 So.2d 1071 (La.1991).
| (¡In order to determine the issue on appeal, we must interpret a constitutional provision, which is a question of law. Constitutional provisions are to be construed and interpreted by the same rules as are. other laws. State v. Expunged Record (No.) 249,044, 2003-1940 (La.07/02/04), 881 So.2d 104, citing, Louisiana Dept. of Agriculture and Forestry v. Sumrall, 98-1587 (La.03/02/99), 728 So.2d 1254. When a constitutional provision is plain and unambiguous, its language must be given effect. Aguillard v. Treen, 440 So.2d 704, 707 (La.1983).
The constitutional provision La. Const. Art. VII, § 20(A)(1) providing for the homestead exemption is plain and unambiguous. We emphasize the initial description of the homestead exemption in the article’s subsection (1) as applying to “the primary residence ... which serves as a bona fide home and which is owned and occupied by any person....” Significantly, “primary” is defined “of first rank, importance, or value.” MerriamNWebster Online Dictionary (2005), www.merriam-web ster.com (28 Apr. 2005). Obviously, use of the word “primary” takes into consideration the idea that a family or individual might have more than one residence — -and in such a scenario, that family or individual would only be eligible for one homestead exemption on its “primary residence.” Moreover, the trial court was correct in emphasizing the notion of “home” in concluding that the homestead exemption is a singular benefit for an individual or a family, be that family a couple which is either community or separate in property. In fact, the article refers to the “bona fide home” as further describing the “primary residence.”
|7Further, we do not agree with Jones’ position that he should be allowed an exemption on the O’Reilly Street house because subsection (2) does not prohibit a husband and a wife from each owning a piece of exempt property. The starting point in the interpretation of any statute is the language of the statute itself. Theriot v. Midland Risk Ins. Co., 95-2895 (La.05/20/97), 694 So.2d 184. The paramount consideration in interpreting a statute is ascertaining the legislature’s intent and the reasons that prompted the legislature to enact the law. Id. Legislative intent is the fundamental question in all cases of statutory interpretation; rules of statutory construction are designed to ascertain and enforce the intent of the statute. Id. So considering, subsection (2) must be read in light of the initial descrip *1159 tion of the homestead exemption in subsection (1) of the article and with the understanding that the exemption only applies to the “primary residence” and “bona fide home” of the family. In that light, after subsection (2) makes clear that title to the homestead may be held in either of the spouse’s names during the marriage,[6] it then reaffirms the historical notion and legal concept of homestead for that family unit as limited “to not more than one” bona fide home regardless of which of the spouses may hold the title.[7]
| RFinally, although the relevant constitutional article does not specifically reference the notion of the “primary residence” belonging to a “family” as that term has been used herein, one only must envision the economic landscape in which this particular tax exemption was created to understand — without any uncertainty — the original intent of this state’s governmental leaders. It is evident that when the homestead exemption was expanded during the depression, that the legislative intent was to alleviate a family’s financial pressures from ad valorem taxes. In fact, from the start, the reference to a bona fide home has been taken “to mean the dwelling house constituting the family residence.”[8] Even before the time the homestead exemption was expanded to exempt a homeowner from ad valorem taxes, “the purpose, evidently, was to secure a ‘home’ beyond the reach of financial misfortune, around which gather the affections of the family, — the greatest incentive to virtue, honor, and industry.” Hebert, supra at 171.
In this case, it is of no importance that Jones and his spouse are separate in property — as a married couple, they are still a legally recognized unit, i.e., a family. As such, they may only benefit from one homestead exemption, which may be declared on their primary residence. Thus, as a matter of law, we agree with the trial court that a married couple, regardless [ 9of whether they avail themselves of the legal regime or choose to enter into a separate property regime, should only be allowed one homestead exemption between them on their primary residence. See also La. Atty. Gen. Op. No. 95-268 (1995). And whereas a factual issue could potentially exist with regards to where a couple’s primary residence might be, we do not believe that is an issue in this case. Here, the fact of which house serves as Jones’ and Charlee’s primary residence does not matter.- Regardless of which residence they choose as their primary residence, be it the O’Reilly Street house or the Bancroft Drive house, they may only enjoy the benefit of one homestead exemption for their family.
Conclusion
For the foregoing reasons, the judgment of the trial court in favor of Erroll G. Williams, Assessor for the Third Municipal *1160 District, City of New Orleans is affirmed. Costs of this appeal are assessed to Charles R. Jones.
AFFIRMED.

. It is uncontested, and neither has it become an issue in this litigation, that Charlee has been granted a homestead exemption on the Bancroft Drive house

. Jones also has a claim against the City for a ^ refund of the .paid property taxes, which claim is still pending. When the trial court certified the judgment in favor of the Assessor as a final judgment, it noted that “depending upon how the appellate court rules on this matter the pending, case [against the City] may in fact be moot.”

.Even before the depression, however, Louisianans enjoyed the protection of a homestead exemption from seizure and sale by general creditors and state taxing authorities. See Hebert v. Mayer, 48 La. Ann. 938, 20 So. 170 (1896), stating "[t]he homestead right of ex- *1157 emptíon claimed by the plaintiff existed prior to the constitution of 1879, under the law of 1865.”

. From the year it was originally enacted in 1934, the homestead exemption statute exempting Louisiana citizens from ad valorem taxes had various amendments before becoming a constitutional provision in 1974.

. Since this litigation, Art. VII, § 20(A)(2) has been amended to state:
The homestead exemption shall extend and apply fully to the surviving spouse or a *1158 former spouse when the homestead is occupied by the surviving spouse or a former spouse and title to it is in the name of (a) the surviving spouse as owner of any interest or either or both of the former spouses, (b) the surviving spouse as usufructuary, or
(c) a testamentary trust established for the benefit of the surviving spouse and the descendants of the deceased spouse or surviving spouse, but not to more than one homestead owned by either the husband or wife, or both.

. The subsection (2) language — "shall apply when the homestead is occupied as such and title to it is in either husband or wife but not to more than one homestead owned by the husband or wife” — does address the situation where both spouses are alive and is not required to be read with the first part of subsection (2) dealing with the situation where one or both spouses is deceased.

. Notably, Art. 10, § 4(9) of the Constitution of 1921 allowed for the exemption "... provided that the exemption shall not be extended to more than one homestead owned by the husband or wife.”

.See, Reynard, supra. Also, consider the definition of "bona fide”:
1: made in good faith without fraud or deceit ...
2: made with earnest intent: SINCERE
3: neither specious nor counterfeit: GENUINE synonym see AUTHENTIC

Merriam-Webster Online Dictionary, supra.